UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---------------------------------------------------------------

UNITED STATES OF AMERICA,     )
                                )
               Plaintiff,   )  Case No. CR 18-223
                                )  Green Bay, Wisconsin
    vs.                        )
                                )  May 24, 2019
PETER M. BERNEGGER,       )  3:01 p.m.
                                )
               Defendant.   )

---------------------------------------------------------------

**TRANSCRIPT OF SUPERVISED RELEASE REVIEW HEARING**
BEFORE THE HONORABLE WILLIAM C. GRIESBACH
UNITED STATES CHIEF DISTRICT JUDGE

APPEARANCES:

For the Plaintiff
UNITED STATES OF AMERICA:    United States Department of
                               Justice (WI-ED) Office of the US
                               Attorney
                               By: WILLIAM J. ROACH
                               205 Doty St - Ste 301
                               Green Bay, Wisconsin 54301-4541
                               Ph: 920-884-1066
                               Fax: 920-884-2997
                               william.j.roach@usdoj.gov

For the Defendant
PETER M. BERNEGGER:        Appearing Pro Se
(Present)


U.S. Probation Office:     KEVIN NORMAN

U.S. Official Transcriber:  JOHN T. SCHINDHELM, RMR, CRR,
Transcript Orders:       WWW.JOHNSCHINDHELM.COM

Proceedings recorded by electronic recording,
transcript produced by computer aided transcription.



1

1        TRANSCRIPT OF PROCEEDINGS

2        Transcribed From Audio Recording

3                  *    *    *

4        THE COURT:  Okay.  You may be seated.  And the clerk

5   will call the case.

6        THE CLERK:  The Court calls Case No. 18-CR-223, United

7   States of America vs. Peter M. Bernegger for a supervised

8   release hearing.  May I have the appearances, please?

9        MR. ROACH:  Good afternoon.  William Roach on behalf

10  of the Government.

11       MR. BERNEGGER:  Peter Bernegger, the Defendant.

12       PROBATION OFFICER:  Good afternoon, Your Honor.  Kevin

13  Norman for U.S. Probation.

14       THE COURT:  Okay.  Well, good afternoon, all.

15       So this is a hearing on a petition concerning the

16  conditions of supervised release Mr. Bernegger is under.

17       Mr. Bernegger was convicted of multiple counts of

18  wire/mail fraud, bank fraud in Mississippi, the Northern

19  District of Mississippi.  I'm not sure exactly what the charge

20  is, but it was various fraud counts, financial crimes.  He was

21  also placed on supervised release for a period of five years.

22  The judgment as amended includes restitution of $1.7 million, in

23  that neighborhood.

24       When the case was transferred to this court in

25  December, the Court did enter an order accepting transfer of

1    jurisdiction and directing that a hearing be set to modify

2    conditions or to address conditions of supervision.  For some

3    reason that fell through and that hearing wasn't scheduled.  And

4    then the probation notified the Court that there had been no

5    restitution payments and asked for a further hearing, and so the

6    Court entered -- or set it for a notice for appearance.

7         And it's -- the order -- the order to appear for

8    today's hearing indicates that a notice to appear to be issued

9    to show cause why the term of supervision should not be revoked

10   for nonpayment of restitution as ordered by the district court

11   in Mississippi.

12        Now, Mr. Bernegger, I can tell you at the outset,

13   there's not an intent or this -- the hearing isn't going to

14   result, at least as far as I can tell from the record as it now

15   stands, in the revocation of your supervision, what I think

16   probation is asking for is that we modify conditions of

17   supervision.

18        But before we take any steps, first of all, I want to

19   advise you of your right to have an attorney represent you.  And

20   you're aware of this, of course.  I don't know, did you

21   represent yourself in the Mississippi action?

22        MR. BERNEGGER:  I did, up to a point, yes.

23        THE COURT:  Well, you certainly have that right to

24   have an attorney represent you in this action.  And if you wish

25   to have an attorney represent you but can't afford one, we can

1 appoint one through the Federal Defender.

2          In fact, Mr. Philip is in the back of the court.  He

3 could represent you if it's your interest to have an attorney

4 represent you.  Of course, as you know, attorneys are trained in

5 the law, they understand the rules of procedure and rules of

6 evidence and are able to make arguments and to present evidence

7 that you as a layperson may not be aware of.  I do realize you

8 have extensive litigation experience, but nevertheless there's a

9 lot of areas you're not familiar with so an attorney would

10 certainly assist you.

11          Do you want to have an attorney pointed?

12          MR. BERNEGGER:  No, Your Honor, I decline.

13          And I would just like to note for the record that

14 that's the first indication I've ever been informed is that

15 there's not a revocation intent at least.  So that's the first

16 time I've heard of that.

17          THE COURT:  Yeah.  Mr. Roach, am I correct that --

18          MR. ROACH:  The defendant did read my motion because

19 my motion set forth -- the motion to adjourn set forth the fact

20 that that petition itself indicates -- the intent is to address

21 his lack of payment and as to the petition dated May 3rd of '19,

22 document 11 states, and set a more clear condition as far as

23 restitution payment is concerned.  That's our intent.

24          THE COURT:  Yeah.

25          MR. ROACH:  Set a restitution payment --

4

1    THE COURT:  Yeah, I looked at the Mississippi

2    judgment, in the amended judgment, and Mississippi does things

3    differently than we do, as every district is different.

4         But I think what you see in the petition and what you

5    may have been upset about and thought the agents were

6    fraudulently accusing you of violating, was the schedule of

7    payment section.  Page 7 of the judgment under schedule of

8    payments, which reads:

9         "Special instructions regarding payment of criminal

10   monetary penalties."

11        It says, "Payments to begin immediately in equal

12   monthly installments while incarcerated.  Any balance remaining

13   upon release from incarceration shall be paid in equal monthly

14   installments as determined by application of the criminal

15   monetary payment schedule adopted by this court to the

16   defendant's verified disposable monthly income.  Such payments

17   to commence 60 days upon release from incarceration to a term of

18   supervised release."

19        And this is the monetary -- criminal monetary payment

20   section lists, of course, the restitution in the amount of $1.7

21   million in the amended judgment.  Originally I know it was over

22   2 million.

23        So it's that -- those payments.  And I don't know what

24   their schedule of payments is in Mississippi.  And equal monthly

25   installments wouldn't take us very far.  But it seems to me what

1    we need to do is get you on a track so you understand what's

2    required of you in order to comply with the conditions of

3    release.

4           Now, I don't expect you to pay $1.7 million in

5    restitution unless you inherit or win the Powerball lottery or

6    something like that, but I do expect you to make good faith

7    efforts to make restitution during the remaining period of your

8    supervised release.

9           So what I would propose we do today is set up a

10   schedule, formulate some conditions that will ensure that you

11   get a job.  And it's not enough to work off and on for cash.

12   You have to get a job that will pay you a regular wage.  And in

13   this -- the current economic conditions, it should not be

14   impossible for a person with your intelligence and your ability

15   and your skills to get a job.  May not be a great job, we're not

16   asking for a great job, just a job so you can start making some

17   payments.

18          Now, you know, and if you comply -- frankly, if you

19   use best efforts to hold a job and make some payments, I see

20   your restitution is due to expire I think in September?

21          MR. BERNEGGER:  Yes, four months.

22          THE COURT:  Four months.  If that happens then you're

23   off.  You're off supervision.  Financial litigation unit of the

24   U.S. Attorney may still continue to seek, but you're away from

25   this process, you're no longer on supervised release.

6

1          On the other hand, if you -- if we set conditions

2    today and you violate those conditions, then you can be brought

3    back for revocation hearing.  And if I revoke you I could send

4    you back to prison and impose additional supervised release.

5          So I think it's in your interest to obviously -- as

6    long as the conditions on reasonable -- and I have an obligation

7    to impose reasonable conditions so that you meet those

8    conditions, because it's a very short time.  The fact that

9    little or no restitution was paid over the first four years of

10   restitution is hard to understand from my standpoint, but we

11   weren't involved.  I don't know why a hearing wasn't scheduled

12   right away when the transfer was effected in December.  I do

13   know, it was a mistake, but nevertheless we're here now.

14         So, you've got a lot of motions here.  And I know you

15   subpoenaed a lot of people.  And from what you're saying I take

16   it that's because you thought we wanted to revoke you today and

17   send you back to prison today.  Is that correct?

18         MR. BERNEGGER:  Yes, Your Honor.  That's based on when

19   I received the second petition filed May 3rd I believe, doc 11,

20   which the first sentence states that basically they're seeking

21   revocation.

22         THE COURT:  The probation officer requests a notice to

23   appear to be issued to show cause why the term of supervision

24   should not be revoked?  That one?

25         MR. BERNEGGER:  Correct.

1          THE COURT:  Yeah.  I think if you go down to the end,

2   is that what you were saying?

3          MR. ROACH:  Last paragraph.

4          THE COURT:  Yeah, the last paragraph notes if you have

5   --

6          "As court intervention in this case is necessary, we

7   would request Your Honor to order a notice to appear to address

8   his lack of payment and set a more clear condition as far as

9   restitution payment is concerned.  Our office has previously

10  asked Mr. Bernegger --"

11         So it probably would have been better to phrase this

12  as a petition to modify conditions of release.  That would have

13  made you less nervous maybe and, you know, more relaxed.  But

14  that's really what we're here for today.

15         MR. BERNEGGER:  Yes, it would have.

16         THE COURT:  Okay.  Well, I don't think it was

17  intentional.  I think that's just the way -- and frankly it's

18  not unreasonable to say, look, you haven't made any restitution

19  payments since you've been released, or very few, and it's 1.7,

20  one could make an argument that you violated a condition of

21  supervision which is to comply with the judgment.

22         They're not making that argument.  And frankly, I

23  think that having made it this far without any problems and

24  having only a few months left on supervised release, you're in a

25  good position to avoid any revocation as long as we can -- you

1    can comply with conditions.

2         So I have a lot of -- in this docket an awful lot of

3    motions here.  And some of them go to my jurisdiction.  And in

4    all honesty I don't see a jurisdictional problem here.  You're

5    under supervision for criminal violations, you've had your

6    appeal.  Appeals are final, I don't have any control over that,

7    even if I wanted to.

8         You're on supervised release.  Your case was

9    transferred to this court.  So I find I certainly have

10    jurisdiction.

11         I understand you're upset about the allegation that

12    you violated a restitution order.  I think that's an argument

13    over terminology.  It's not grounds to find anybody in contempt.

14         So I'm going to -- and strike text from petitions, I

15    mean, those are allegations.  You can dispute the allegations,

16    but I'm not going to strike or edit the petition.  So I want to

17    get through these.

18         So motion to strike, 15, is denied.

19         Motion to void petitions, close case, that's denied.

20         Motion to find officers in contempt of court, that's

21    denied.

22         Motion to produce documents.  You know, in terms of

23    documents, all they have is what was filed in the other court.

24    And do you have anything else, Mr. Norman, that would relate

25    to --

9

1      PROBATION OFFICER:  Only what he provides us.

2      THE COURT:  Yeah.  So you're just getting his input.

3  You haven't -- you know, there's not a -- their file consists of

4  whatever the probation agent in Mississippi had.  Or he's been

5  up here for the entire time.

6      PROBATION OFFICER:  Correct.

7      THE COURT:  Okay.  So he's been up here for the five

8  years?  And you've been doing courtesy supervision?

9      PROBATION OFFICER:  Right.

10      THE COURT:  And there was no effort made before this

11  to --

12      PROBATION OFFICER:  Well, he --

13      THE COURT:  There was an appeal.

14      PROBATION OFFICER:  And there was a hearing in

15  Mississippi in September of 2016.

16      THE COURT:  All right.  And that's when he was ordered

17  to submit to what they call a debtor -- a debtor's examination,

18  and then it was just transferred here.

19      MR. BERNEGGER:  Your Honor, may I state, please, is

20  that this all stems from is that I was under the impression

21  reading the judgment of conviction that there would be a hearing

22  and there would be a payment amount established per month,

23  depending on all the factors decided at that hearing.

24      The hearing was never held.  And I asked what --

25  multiple times what is my monthly payment, nobody would ever

1    tell me, ever.

2              THE COURT:  Yeah.

3              MR. BERNEGGER:  No court, no probation officer,

4    nobody.

5              THE COURT:  Yeah.  And frankly -- and you're not being

6    revoked.

7              MR. BERNEGGER:  Yeah.

8              THE COURT:  Because I think you should have been told.

9    They should have set a payment schedule.  And having failed to

10   do that --

11             MR. BERNEGGER:  They didn't, yeah.

12             THE COURT:  And they should have.  But that doesn't

13   mean you can't make payments.  And it sounds like the judgment

14   itself has some sort of payment schedule.  You're supposed to

15   pay according to whatever the thing is.  I mean, you could use

16   efforts.

17             But let's -- that's water under the dam -- or under

18   the bridge, over the dam.  Let's move on to -- but I'm going

19   to -- I'm not going to find officers in contempt.  So 18's

20   denied.

21             Produce documents.  I don't think there are any

22   documents at issue right now.  So I'll deny that.

23             And I'll deny the motion to dismiss petition.

24             I didn't want to put this off, so -- and Mr. Maier

25   doesn't have any involvement in this case, does he?  I mean, his

1    name is on -- was his name on some petition?

2         MR. ROACH:  His name was on the petition so it's a

3    courtesy contact from probation to the U.S. Attorney's Office if

4    they agree to petitioning the Court.

5         THE COURT:  This is your office's first involvement in

6    this case; is that right?

7         MR. ROACH:  Well, we appeared for the motion to

8    terminate supervision early.

9         THE COURT:  Oh, right.

10        MR. ROACH:  And that was in February --

11        THE COURT:  Yeah, did you respond to that, Mr. Roach?

12        MR. ROACH:  I did.

13        THE COURT:  Okay.  So you know more about this case

14   than Mr. Maier.  Mr. Maier was simply notified as a member of

15   your office.

16        MR. ROACH:  Fair statement.

17        THE COURT:  So, okay.  So, he's not disqualified, but

18   I don't expect to see him in the case anyhow.  And again, the

19   motions -- so 25 is denied.

20        32, motion to dismiss petitions will be denied.

21        34, clarify sentence imposed.

22        I think the motion -- the judgment of the Court is

23   clear, but you're right, you should -- we should make clear the

24   conditions of supervision.  We're going to modify those today if

25   we can.  And so that's -- 34 will be denied in terms of to the

1  extent it asks for modification of sentence.  If it's asking for

2  modification of conditions of supervised release, to that extent

3  that's the purpose of today's hearing.  So we will take that

4  under --

5       Okay.  In terms of the modification.  Mr. Bernegger,

6  as I said, I think you need to get a job.  Because that's how

7  they determine the amount of payments you should make.  And a

8  typical order at this time would go something like this.  These

9  are the conditions I would suggest we add to your -- or modify

10 or add to your conditions.

11      Number one is:  You're already ordered as a condition

12 of supervision to work regularly at a lawful occupation unless

13 excused by your agent for schooling, training, or other

14 acceptable reasons.

15      So I'm going to put it this way.  You're to use your

16 best efforts to find and hold full-time employment.  Okay?  And,

17 as I said, I'm looking at an economy with an unemployment rate

18 of around 4 percent with "help wanted" signs all over the place.

19      Now, you may be qualified to do management-level work

20 or high-level work, I don't care if you get that work or if you

21 work at a McDonald's or a Walmart.  Get a job.  Get a regular

22 job.  Try to get a full-time job if you can.  It doesn't matter

23 to me.

24      I recognize that -- you know, you've said before

25 there's a better job you could get in Florida if you could go

13

1   there and be freed of supervised release.  After your

2   supervision is over, go wherever you want.  But while you're on

3   supervised release you're here, absent permission of the court

4   or your agent.

5           And if, in fact, there's a job opening that you think

6   you could make better payments, tell your agent about it.  You

7   can come back and we can look at that then.  Although there's

8   not much time left on your supervised release, as I said.

9           So that's number one:  Find and use your best efforts

10  to find and hold full-time employment.

11          And if you're -- I'm going to review this case in

12  about 45 days.  The review hearing -- I'm going to set it for

13  review hearing.  It can be cancelled if by that time you have

14  full-time employment.

15          If you don't have full-time employment, then I want

16  you to appear here and tell me why you didn't.  Show me what

17  efforts you've made.

18          Obviously, as you know, we don't lock people up if

19  through no fault of their own they fail to comply with a

20  condition of supervised release.

21          In other words, if you have really tried to get a job,

22  you have applications and you can tell me where you went and you

23  just didn't get a job for some reason, if I can't find that

24  that's -- that that's a willful violation, I will not revoke

25  you.

1        On the other hand, if you come in and said, well, I

2   found -- I worked for this buddy for a couple weeks here and

3   couple -- I wasn't really looking for the kind of employment you

4   were talking about, Judge, well, then that is a willful

5   violation.  Because I want you to find -- use your best effort

6   to find and hold full-time employment with an employer that

7   withholds, that pays wages, not cash under the barrel, but

8   actually, you know, you get wage statements and they say this is

9   reportable income.  Okay?  That's the only way we're going to

10  know and if we're going to have any basis of supervising.  So

11  that's the kind of employment you should have.

12       On the other hand, if you have some sort of

13  self-employment or employment that suddenly you're making $500

14  payments a month, then we'll probably excuse that.  But if

15  that's -- if that's not the case, you have to have this type of

16  job so we know what's going on.

17       And the second condition is I want you to make a

18  payment, a monthly payment within 30 days of today of a hundred

19  dollars a month or 20 percent of your after-tax income,

20  whichever is greater.  And the reason I'm choosing 20 percent is

21  it appears you're not paying rent or mortgage payments.  And so

22  I would think a lot of your income, whatever income you have,

23  could be used to pay off the restitution.

24       So a hundred dollars is a meager amount and 20 percent

25  of the income, the greater of, would be the condition.

1          That's what I would suggest.  But I want to hear,

2  first of all, the government's view, Mr. Roach, does that seem

3  reasonable to you?

4          MR. ROACH:  That seems reasonable as well.

5          And the defendant, I would note we mentioned that

6  September of 2016 prior revocation hearing, the defendant was

7  ordered to submit a debtor's examination for pretrial and for I

8  believe the FLU unit in Mississippi.  He complied.  He submitted

9  the financial disclosure statement.

10          Some time has expired since September of 2016, I'm

11  sure our FLU unit in Milwaukee will want to pursue this if

12  there's something to pursue.  I would ask as a third condition

13  he comply with another financial statement disclosure if it's

14  different from the September of 2016 one and comply with any

15  reasonable request of the FLU unit in Milwaukee.

16          THE COURT:  Yeah.  He's to provide the Probation

17  Office access to requested financial information.  That's a

18  special condition of probation already, or of supervision.  So

19  that condition will continue.

20          And that should include that type of thing.  If

21  Probation asks for requested financial information, he's to

22  provide that.  Of course, it can't be used to harass or anything

23  like that, but they're entitled to financial information.  Okay?

24          Mr. Bernegger, what do you think of those conditions?

25          MR. BERNEGGER:  Your Honor, I have a question.  You

1    want me to get a job, which just noting I already am working

2    under the situations I've reported to the probation officer.

3            THE COURT:  Tell me what those are though.  My

4    understanding is it's cash?

5            MR. BERNEGGER:  Well, yes, but I work odd jobs, a wide

6    variety of them.  And it is cash, but it's legal.  I'm not going

7    over the limits.

8            THE COURT:  So why not get a regular full-time job?

9            MR. BERNEGGER:  I haven't been able to with my health

10   conditions.

11           THE COURT:  What are your health conditions?

12           MR. BERNEGGER:  Well, I have numerous ones.  I have

13   arthritis in my low back.  By doctor's order I don't lift more

14   than 10 pounds.  I recently have been diagnosed with glaucoma.

15   And --

16           THE COURT:  Mr. Norman, were you aware of his medical

17   problem?

18           PROBATION OFFICER:  Recently he made me aware of the

19   glaucoma.

20           THE COURT:  Okay.  Can you supply medical records that

21   will substantiate your health?

22           MR. BERNEGGER:  Yes.  And I also have a torn meniscus

23   in my right knee.

24           THE COURT:  Those are the kinds of -- that's the kind

25   of reason that would excuse you from full-time employment

1    requirements.

2         MR. BERNEGGER:  And I have a cardiogenic dysfunction,

3    which is a connection between the brain and the heart where I

4    can pass out.  I can't operate equipment or drive trucks.

5         THE COURT:  Okay.

6         MR. BERNEGGER:  For example.  But, back to my

7    question, if I may, please, is that you want me to get a job,

8    I'm clarifying, because you want money paid towards the victims,

9    the restitution?

10        THE COURT:  Right.

11        MR. BERNEGGER:  Okay.  Well, I would have to borrow

12   the money, but what if I paid a thousand dollars within five

13   days and end my supervised release today?  It's only four months

14   from now.  I won't even get a job -- I'm not going to get a job

15   in a day.

16        THE COURT:  No, no, I know you're not gonna -- that's

17   why I said 30 days.  Or I'd review it in 45 days.

18        MR. BERNEGGER:  And then also when you get -- when you

19   get a job typically there's at least a two-week delay before you

20   get your first paycheck, too.  That would be a guaranteed

21   versus --

22        THE COURT:  I know, Mr. Bernegger.  And I bet you I

23   could get you up to 2,000 if I started bargaining with you.

24        MR. BERNEGGER:  I don't think so.

25        THE COURT:  Mr. Roach, what do you think?

1    MR. ROACH:  This isn't a time for bargaining, it's a

2    time for conditions.  Let's make efforts to get the job and

3    let's keep the hundred-dollar payment here in play.  By just

4    stating he can come up with an additional sum of money, that's

5    not what we're here to do.

6    THE COURT:  And, Mr. Bernegger, I will set it on for

7    hearing in 45 days.  And if you come back and tell me just what

8    you -- if you present evidence that I can't get employment

9    because of these health problems, as I said, that's a defense --

10   that's showing me that it's not -- your failure to obtain

11   employment and to meet my condition is not willful and I will

12   not find it willful if you show me that evidence.

13   If you're able to make the hundred-dollar payments

14   anyhow, I'd probably cancel the hearing at this stage.  If you

15   provide information to Mr. Norman and Mr. Norman thinks that's

16   the best we're going to get, I'll cancel the hearing.

17   Now, you may borrow the thousand, pay a hundred

18   dollars a month, and you're probably going to walk out of here

19   at the end of September or whenever your supervision is up

20   without us -- you still have the Financial Litigation Unit to

21   deal with, but, you know, absent employment I'm not sure how

22   effective they can be.

23   But I'm not going to bargain with you to terminate

24   early.  And I don't know your medical condition.  If it's that

25   bad, though, if you have those types of serious medical

1  conditions that prevents you from holding a full-time

2  employment, and the best you can do is the kind of employment

3  you're talking about, if it still allows you to pay a hundred

4  dollars a month, whatever you can pay a month, pay something.

5  Show goodwill and pay something.  Pay what you can.

6         But I'm going to set it at the greater of a hundred

7  dollars a month or 20 percent of your income.

8         I'll direct you to use your best efforts to find and

9  hold full-time employment, but recognize that you may have a

10  defense in 45 days and come back and tell me these are the

11  medical problems I got that prevent me from doing it.

12         MR. BERNEGGER:  All right.

13         THE COURT:  All right?

14         MR. BERNEGGER:  Yes.

15         THE COURT:  All right.  Then those are the new

16  conditions.

17         Mr. Norman, prepare them in a separate order.  I'll

18  enter that order then.  Conditions are modified in this respect.

19  And let's set it for a hearing in 45 days.  So, where are we,

20  we're the end of -- so we want to be like in early July.

21         How about Friday, July 12.  Is there a good time of

22  day, Mr. Bernegger?

23         MR. BERNEGGER:  It won't matter.

24         THE COURT:  How about 3:00 on Friday, July 12th?

25         MR. BERNEGGER:  All right.

1    THE COURT:  Okay?

2    MR. ROACH:  Thank you.

3    THE COURT:  Anything else today?

4    MR. ROACH:  No.

5    MR. BERNEGGER:  No.

6    THE COURT:  Very well.  Thank you, all.

7    (Hearing concluded at 3:27:40 p.m.)

8                          *     *     *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


        I, JOHN T. SCHINDHELM, RMR, CRR, Official Court
Reporter and Transcriptionist for the United States District
Court for the Eastern District of Wisconsin, do hereby certify
that the foregoing pages are a true and accurate transcription
of the audio file provided in the aforementioned matter to the
best of my skill and ability.


Signed and Certified June 14, 2019.

/s/John T. Schindhelm

John T. Schindhelm


                John T. Schindhelm, RPR, RMR, CRR
                United States Official Reporter
                517 E Wisconsin Ave., Rm 236,
                    Milwaukee, WI 53202
                Website: WWW.JOHNSCHINDHELM.COM

